Marshall, C. J.
 

 In this case error is prosecuted by the state of Ohio from the Court of Appeals
 
 *533
 
 because the Court of Appeals reversed the judgment of the court of common pleas, wherein the defendant, William Schwab, under an indictment charging him with assault with intent to commit rape was found guilty under Section 12421, General Code. It is not necessary to refer in any way to the evidence introduced at the trial, because the legal questions argued in this court arise (1) upon the legality of the grand jury by which the indictment was returned, and (2) upon alleged error in the charge.
 

 Upon this latter question it is sufficient to say that having examined the record we find abundant evidence introduced by the state, which, if believed, will support the verdict of guilty.
 

 The Court of Appeals reversed the judgment of the court of common pleas solely upon the question of alleged error in the charge, but it is urged by counsel for the accused that the judgment of the Court of Appeals was wrong in refusing to reverse on the ground of the alleged illegality of the grand jury, and that, if the Court of Appeals erred in that particular, its judgment of reversal was nevertheless justified, even though based on the other ground. We will consider these two questions in the order named.
 

 The admitted facts on the first question are that the grand jury was called at the beginning of the term of court at which the indictment was found and that it heard and disposed of the cases presented at that time and made a report thereof to the court.- Thereupon the grand jury by order of the court was retained for further service, according to the usual custom prevailing in that
 
 *534
 
 county of retaining the grand jury during the period of the entire term of court, to be discharged only at the end of such term. In accordance with this practice, when the defendant Schwab was bound over to the common pleas court of Hancock county by a magistrate the grand jury was notified to again convene, the vacancies caused by death and absence were filled, and the grand jury was again charged with reference to this particular case and thereupon returned the indictment.
 

 It is insisted by counsel for the accused that when the grand jury was charged at the beginning of the term, and disposed of the business then pending, and made a report, the court had no power to recess the grand jury or longer retain it in office, and that all subsequent proceedings were therefore null and void.. This theory assumes that the court has no control or supervision over the grand jury after the first charge is delivered, and that the grand jury may thereafter proceed in its own way; that it may disregard the instructions of the court; that it may adjourn at will; and that it may even refuse to hear and decide any of the cases presented to it. This theory, which almost entirely divorces the grand jury from any supervision or control on the part of the trial court, does violence to all theories and traditions relating to the status and the functions of juries. A grand jury is an arm of the trial court, quite as much as the petit jury. It is true that Section 10 of the Ohio Bill of Rights makes it obligatory in trials for crime to first have the presentment or indictment of a grand jury. The Legislature could not therefore omit to make provision for a grand jury
 
 *535
 
 in the Code of Criminal Procedure, but it does, nevertheless, have full power to provide the manner of impaneling and the control and supervision of its work as a part of the administration of criminal justice. The Legislature has made such provision in Chapter 7 of the Ohio Penal Code, Sections 13554 to 13577, inclusive, General Code. In most of those sections the duty of the trial court pertaining to the control and supervision of such grand jury is found, and some duties of the court, in calling, filling vacancies, charging, and otherwise directing the grand jury’s work, are defined. Section 11426, General Code, provides that a grand jury can only be summoned by court order. Section 13554 imposes upon the judge the duty to hand the foreman of the grand jury a list of the cases to be heard. Section 13558 requires the court to charge the jurors as to their duties and to admonish them as to their conduct. Sections 13565 and 13566 provide for the court furnishing aid to the jury in securing the testimony of witnesses. Section 13567 gives the court power to discharge a juror on account of sickness and to appoint another. Section 13568 empowers the court to call a new grand jury after the discharge of the regular grand jury, but nowhere in the statutes is specific provision made fixing the time, or manner, or authority for discharging a grand jury.
 

 Inasmuch as the court has been given authority to control and supervise the work of the grand jury, it seems to be a necessary corollary to that right, not necessary to be stated in the legislative provisions, that the grand jury should continue its service until such time as the court in its wisdom
 
 *536
 
 sees fit to discharge it. If the power to discharge the grand jury rested solely within the jury itself, the court would be absolutely powerless to compel its action in the disposition of pending cases. Since the power to discharge must rest somewhere, it seems so natural to repose that power with the court, and that power seems so essential in the nature of things, that it is necessarily implied and included in the other powers hereinbefore discussed. If it should be made to appear that the trial court had held the services of the jury during the term for a corrupt purpose, or if it should be made to appear that an accused person was prejudiced thereby, a different situation would be presented.
 

 We are of the opinion therefore that the Court of Appeals did not err upon this point and that the grand jury was not an illegally constituted body, nor was there any irregularity in the action of either the court or the grand jury in returning the indictment in this case.
 

 ‘ Turning to the second question, let us inquire whether the court erred in the charge.
 

 This indictment was framed under Section 12421, General Code, which we quote:
 

 “Whoever assaults another with intent to kill, or to commit robbery or rape upon the person so assaulted, shall be imprisoned in the penitentiary not less than one year nor more than fifteen years.”
 

 The evidence discloses that the prosecuting witness was under the age of consent, to-wit, 15 years, and that the defendant was over the age of 18 years, to-wit, 23 years. Why the indictment was not drawn under favor of Section 12415, General
 
 *537
 
 Code, we do not know, unless it was desired to convict of felony and avoid a possible workhouse sentence; or unless the prosecutor was under the notion that Section 12415 could only apply where consent was given, it no doubt having developed in the grand jury inquest that the prosecuting witness had made a determined resistance.. The indictment alleged the felonious assault, the employment of force and violence with the intent unlawfully to ravish and carnally know the said Agnes MaeMurray against her will, and without any allegation of the age of either the defendant or the prosecuting witness. The undisputed testimony establishes the elements of felonious assault, the employment of force and violence, the determined resistance of the prosecuting witness, and that defendant only desisted after his face was badly scratched by her finger nails.
 

 That portion of the charge complained of is as follows:
 

 “But if you further find from the evidence beyond a reasonable doubt that the defendant committed the assault upon the said Miss MaeMurray with the intent to have sexual intercourse with her against her will and intended to use such force as might be necessary to accomplish his purpose, and would have done so but for her resistance thereto, then, and in that event, you will return a verdict finding the defendant guilty of the crime of assault with intent to rape, as he stands charged in the indictment.
 

 “I might stop here, but counsel for the defendant, as they had the right to do, have submitted two special instructions with request that I give
 
 *538
 
 the same to you in this charge. They are correct propositions of law but are no different in substance than those already given. They differ only in form, but as the defendant is entitled to have them given as presented, or covered in the general charge, I have concluded to give them to you as they are that they may tend to elucidate what I have already said:
 

 “You are instructed that before you can find the defendant, William Schwab, guilty of the crime with which he stands charged in the indictment in this case, the state of- Ohio must prove beyond a reasonable doubt not only that the defendant, William Schwab, made an assault upon Agnes Mac-Murray and that said defendant at the time of such assault had a purpose to have sexual intercourse with said Agnes MacMurray, but also that he, the said William Schwab, intended then and there to use whatever degree of force might be necessary to overcome any resistance made by her and thereby accomplish his said purpose of having carnal or sexual intercourse with her, the said Agnes Mac-Murray. ’ ’
 

 The fault found with the foregoing instruction is that in the paragraph first quoted it was charged that the defendant must be found to have committed the assault with the intent to have sexual intercourse against the
 
 will
 
 of the prosecuting witness. It is claimed that this was erroneous, and that the court should have charged, as was in fact charged in the last paragraph above quoted, that the defendant must have intended to use whatever degree of force might be necessary to overcome her
 
 resistance.
 
 It was of course only necessary
 
 *539
 
 that the jury should find that the evidence established all the elements of the crime of assault with intent to commit rape. Rape is not defined in Section 12421, but it is defined in Section 12413 as follows:
 

 “Whoever has carnal knowledge *
 
 * * of
 
 any other female person forcibly and against her will shall be imprisoned,” etc.
 

 Common-law crimes are not recognized in Ohio, and many of the statutory crimes are stated in such general terms that it is necessary to look to the common-law definitions. This is not true, however, of the crime of rape, because the crime is specifically defined by statute. It will be found further that the statutory definition coincides perfectly with the common-law definition. Clearly under the foregoing definition the only elements of the crime of assault with intent to commit rape are the felonious assault, the intent to ravish, and the opposing will.
 

 Resistance is not always a necessary element. This principle has been recognized by this court in the case of
 
 Smith
 
 v.
 
 State,
 
 12 Ohio St., 466, at page 470 (80 Am. Dec., 355), where Peck, J., speaking for the court, on the subject of opposing will, said:
 

 “Among the admitted exceptions to this rule, are cases of females who are
 
 non compos,
 
 who can have no intelligent will; persons reduced to a state of insensibility and violated while in that condition, and cases where the consent has been induced or the opposition prevented, by fears of personal violence; and among the more questionable, are
 
 *540
 
 cases where the consent has been obtained or opposition prevented, by fraud or false personation.”
 

 In addition to these exceptions the standard works on criminal law recognize several others. The crime of rape, as well as the crime of assault with intent to commit rape, is complete even though no resistance be offered, if the female is in law incapable of consenting. This is true if she is under the age of consent, or intoxicated, or asleep. It is apparent therefore that there is no particular magic about the word “resistance” in a charge upon an indictment for felonious assault. It is doubtless because of the many cases which have been discussed in the authorities, and the many others which might be easily imagined where resistance is neither a necessary nor a proper element for consideration, that the legislators studiously avoided any reference to resistance and by definition made the crime complete upon proving that it was committed with force and against the will.
 

 In the instant case it will be seen that the court clearly charged the elements of the crime, and the instruction would have been sufficient if nothing further had been stated. It was, however, entirely proper, and even commendable, to further elaborate and elucidate the charge by the additional instruction, as requested. “Will” is, defined as wish, desire, pleasure, inclination, choice, the faculty of conscious, and especially, of deliberate, action. It is purely and solely a mental process, to be ascertained, in a prosecution for rape, by what the prosecuting witness may have said or done. It being a mental process, there is no other manner
 
 *541
 
 by which her will can be ascertained, and it must be left to the jury to determine that will by her acts and statements, as disclosed by the evidence. It is but natural, therefore, that in charging the jury upon the subject of rape, or assault with intent to commit rape, the courts should have almost universally, and, in many cases, exclusively, discussed “consent” and “resistance.” There can be no better evidence of willingness than consent, and there can be no better evidence of unwillingness than resistance. No lexicographer recognizes “consent” as a synonym of “willingness,” and it is apparent that they are not synonymous. It is equally apparent, on the other hand, that the true relation between the words is that willingness is a condition or state of mind and consent one of the evidences of that condition. Likewise resistance is not a synonym of unwillingness, though it is an evidence thereof. In all cases, therefore, where the prosecuting witness has an intelligent will, the court should charge upon the elements of consent and resistance as being proper elements from which the jury may infer either a favorable or an opposing will. It must, however, be recognized in all cases that the real test is whether the assault was committed against the will of the prosecuting witness. The charge of the court in this case recognized and properly emphasized this test.
 

 It is a matter of wonder that this concrete question has not previously been decided by this court, and it is probable that trial courts have generally charged juries that they must find that the defendant must overcome the resistance of his victim rather than to charge that he must overcome the
 
 *542
 
 will. It would not have been error to have so charged in this case, but, as hereinbefore discussed, eases are conceivable where it would not be necessary to show resistance, and other cases where resistance might have ceased though the will was still active.
 

 We are of the opinion that the charge contained no error and that the judgment of the Court of Appeals in reversing the judgment .of the court of common pleas was erroneous, and that the Court of Appeals should therefore be reversed and the judgment of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Wanamaker, Day and Allen, JJ., concur.
 

 Robinson, Jones and Matthias, JJ., concur in the judgment.